**McKIBBEN CONSTRUCTION, INC., and McKibben Realtors, Inc., Appellants–Defendants,**

v.

**Robert LONGSHORE, Appellee– Plaintiff.**

**No. 34A02–0210–CV–867.**

Court of Appeals of Indiana.

May 12, 2003.

Rehearing Denied June 19, 2003.

---

Thomas J. Trauring, McGarvey, Trauring & Wilson, Jones Hoffman & Admire, Franklin, IN, Attorney for Appellants.

Russell T. Clarke, Jr., Emswiller, Noland & Clarke, Indianapolis, IN, Attorney for Appellee.

Carmen L. Quintana, Indiana State Department of Health, Indianapolis, IN, Attorney for Amicus Curae.

## OPINION

BAKER, Judge.

Appellants-defendants McKibben Construction, Inc. and McKibben Realtors, Inc. (McKibben) appeal the denial of their motion for summary judgment in a cause of action for misrepresentation, fraud, and breach of warranty brought against it by appellee-plaintiff Robert Longshore. Specifically, McKibben contends that the trial court erred when it found that the Howard County ordinance governing septic systems was not unconstitutionally vague and violative of due process rights. McKibben also argues that even if the ordinance is constitutional, a private right of action will not lie for an ordinance violation. Furthermore, McKibben maintains that Longshore's action is barred because there is no genuine issue of material fact as to the applicability of the statute of limitations and the doctrines of waiver and collateral estoppel. Finally, McKibben claims that the trial court erred in overruling its motion requesting that certain affidavits of expert witnesses be stricken. Concluding that the trial court correctly denied McKibben's motion for summary judgment, we affirm and remand.

### FACTS

The facts most favorable to Longshore, the non-moving party, reveal that during late 1990 and early 1991, McKibben constructed a home in Howard County. During the building process, McKibben applied to the Howard County Health Department for a septic system permit. On the permit application, McKibben stated that the home would have three bedrooms. The permit application described

a septic system with a 1,000 gallon tank and 1,500 square foot leach field, and these specifications were within the prescribed limits of the applicable county ordinance, Howard County Private Sewage Disposal Ordinance 1977–39, for a three bedroom home. During construction, Howard County Building Inspector Joe Cross inspected the septic system and verified that the system actually installed was in conformance with the system detailed in the permit application.

Upon completion of the house, McKibben marketed the home as having four bedrooms. Longshore purchased the home from McKibben on February 13, 1992. In the purchase agreement, Longshore expressly waived his right to an independent inspection of the home and released McKibben from liability with respect to defects. However, the release signed by Longshore did not comply with the statutory form of a waiver for the implied warranty of habitability.

In May 1998, Longshore experienced problems with the septic system. Specifically, his back yard began to flood, and at one point his yard contained three inches of standing wastewater. Appellant's App. p. 38. On May 26, 1998, Robert Paulus, an inspector for the Howard County Health Department, inspected Longshore's property. Paulus found that the septic system had failed because the system was undersized. Paulus determined that the system failed to comply with the ordinance because the septic tank and absorption field were too small for a four bedroom home.

On May 5, 1999, Longshore filed his complaint against McKibben on account of the septic system failure, alleging misrepresentation and fraud because McKibben had marketed the home as a four bedroom house when the septic system was capable only of accommodating three bedrooms. Longshore also alleged a breach of the implied warranty of habitability because the septic system did not comply with the local septic system ordinance for a four bedroom home. On March 19, 2002, McKibben filed a motion for summary judgment, alleging that the septic system ordinance was unconstitutional and did not give rise to a private right of action. Additionally, McKibben argued that no genuine issue of material fact remained as to whether Longshore's action was barred by the statute of limitations and the doctrines of waiver and collateral estoppel. On May 17, 2002, Longshore filed his memorandum in opposition to summary judgment and designated certain affidavits of expert witnesses. McKibben objected to the affidavits on the grounds that the witnesses were not qualified as experts.

On September 30, 2002, the trial court denied McKibben's motion for summary judgment, overruled its objections to the experts' affidavits, and certified its judgment for interlocutory appeal. McKibben now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We first note that the party appealing from "a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous." *Severson v. Bd. of Tr. of Purdue Univ.*, 777 N.E.2d 1181, 1188 (Ind.Ct.App.2002). Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party." *Owens Corn-*

*ing Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001).

## II. Constitutional Claims

### A. Vagueness

■ McKibben argues that Howard County Private Sewage Disposal Ordinance 1977–39 is unconstitutionally vague and, thus, cannot form the basis of a claim for breach of the implied warranty of habitability. Specifically, McKibben contends that the term "bedroom" is not defined in the ordinance. Because future occupiers could always furnish a room with a bed, McKibben maintains that in the ordinance it "was not given ascertainable standards for prognosticating how many rooms in the home would be furnished and used for sleeping." Appellant's Br. p. 27.

■ In reviewing a constitutional challenge, we note that "legislation under constitutional attack is clothed with a presumption of constitutionality." *Neudecker v. Neudecker,* 566 N.E.2d 557, 562 (Ind. Ct.App.1991). Additionally, we will not find an ordinance void for vagueness if its language is adequate enough to inform a person of average intelligence what conduct is proscribed. *Id.* We look to common generally accepted usage of words in determining whether they are sufficiently specific. *Id.* Finally, if a particular construction of the ordinance will render it constitutional, we must give it that construction. *Id.*

While McKibben is correct in stating that future residents of a home may transform a room into a bedroom by placing a bed therein, a person of ordinary intelli-gence would reasonably know what the term "bedroom" means. The definition of "bedroom" is "a room furnished with a bed and intended *primarily* for sleeping." *Websters' Ninth New Collegiate Dictionary* 139 (1985) (emphasis added). Thus, while a kitchen could undoubtedly be fitted with a cot, it *primarily* is a place to prepare meals and, thus, not a bedroom. In sum, the ordinance was such that a reasonable person would be informed of its meaning. Accordingly, the ordinance is not void for vagueness.

### B. Due Process

■ McKibben argues that the ordinance cannot form the basis for a claim of breach of the implied warranty of habitability because the ordinance violates McKibben's due process rights under the Fourteenth Amendment of the U.S. Constitution [1] and Article I, Section 12 of our state constitution. [2] Specifically, McKibben insists that the ordinance's use of the number of bedrooms in calculating the size of the required septic system is unreasonable. Appellant's Br. p. 33. McKibben argues that "there are no reliable scientific data, and no rationale showing that the size of the septic system is logically related to the number of rooms in a dwelling that are furnished and used for sleeping." Appellant's Br. p. 34.

■ We have held that, under the Fourteenth Amendment and Article I, Section 12, "laws that involve a suspect classification and those that burden the exercise of fundamental rights receive the strictest scrutiny. Classifications not involving a suspect class or a fundamental right are

---

1. The Fourteenth Amendment to the U.S. Constitution reads, in relevant part: "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."

2. Article I, Section 12 of our state constitution reads, in relevant part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

reviewed under a rational basis standard. A statute can survive rational basis scrutiny if the classification in the statute bears some rational relationship to a legitimate governmental goal." *Baker v. State,* 747 N.E.2d 633, 637 (Ind.Ct.App.2001) (citations omitted). Because, McKibben does not contend that a fundamental right is involved, we review the ordinance using a rational basis standard.

◼ In addressing McKibben's challenge, we are mindful that "the State has the inherent power to enact laws, within constitutional limits, to promote order, safety, health, morals, and the general welfare of society." *Zahm v. Peare,* 502 N.E.2d 490, 494 (Ind.Ct.App.1985). Specifically, laws enacted to protect the public—such as those controlling the issuance of sewage—must have some rational relation to the goal sought. *Id.* Our review under both the federal and Indiana constitutions is identical. *N.B. v. Sybinski,* 724 N.E.2d 1103, 1112 (Ind.Ct.App.2000).

Here, Dr. James Converse of the University of Wisconsin stated in his affidavit that "the vast majority of states and local regulations or ordinances regarding septic system requirements are based upon the number of bedrooms" in a home. Appellant's App. p. 376. Additionally, the residency of two persons per bedroom and water usage of 75 gallons per person per day are presumed by local and state governments in drafting ordinances. Appellant's App. p. 376. Alan Dunn, a manager from the Indiana State Department of Health, averred that the administrative rule on which Howard County's ordinance was based used the same assumptions: two persons per bedroom and 75 gallons per person per day. Appellant's App. p. 390.

Viewing the evidence in the light most favorable to Longshore, we cannot but conclude that the ordinance's specifications are rationally related to the valid goal of protecting the public from sewage. It is reasonable to conclude that a greater number of bedrooms in a home will lead to a greater number of residents and, therefore, greater amounts of wastewater. Thus, McKibben's claim that the ordinance violated its due process rights must fail.

### III. Private Right of Action

◼ McKibben claims that the ordinance does not provide for a private right of action. Specifically, McKibben notes that the ordinance, like most regulatory schemes, was intended to protect the community at large, not a distinct individual. Appellant's Br. p. 35.

McKibben correctly points out that this court has previously declined to hold that ordinances prescribe a specific duty on the part of a landowner. *Carroll v. Jobe,* 638 N.E.2d 467, 471 (Ind.Ct.App.1994). McKibben places emphasis on the *Carroll* court's holding that legislatively imposed requirements do not give rise to a private right of action unless specifically stated. Appellant's Br. p. 37.

McKibben's arguments, however, fail to note that *Carroll* and the decisions that followed its rule related to *negligence* suits. In *Lawson v. Lafayette Home Hosp., Inc.,* we followed *Carroll* in holding that an ordinance that requires that an occupier of land to remove snow from an abutting sidewalk does not create a duty under which that occupier can be held liable by pedestrians for *negligence.* 760 N.E.2d 1126, 1129 (Ind.Ct.App.2002). In *Frampton v. Hutcherson,* we followed *Carroll* and held that an ordinance requiring that a landowner repair a public sidewalk when ordered to do so by a city did not give rise to a duty under which that landowner could be found liable for *negligence.* 784 N.E.2d 993, 997 (Ind.Ct.App.2003). No

case to date has addressed *Carroll's* applicability to torts other than negligence.

Here, negligence was not pled. Longshore's complaint alleged misrepresentation, fraud, and breach of warranty, which are intentional torts and contract claims. Thus, Longshore did not rely on the ordinance to establish a duty on the part of McKibben because Longshore was not alleging negligence. Instead, Longshore is simply claiming that he was fraudulently led to believe that the septic system would accommodate four bedrooms when it actually could only sustain three and that the septic system he bargained for was not the one he received. The trial court correctly determined that Longshore did not rely on the ordinance in denying McKibben's motion for summary judgment.

### IV. Statute of Limitations

 McKibben asserts that Longshore's fraud, misrepresentation, and breach of warranty claims are barred by the applicable statutes of limitations. Specifically, McKibben notes that Longshore was alerted to the state of the septic system when Debbie Longshore obtained a copy of the septic permit—which noted that the house had a septic system for only three bedrooms—on May 3, 1993, when Debbie applied for a permit to build a swimming pool. Because suit was filed on May 5, 1999, according to McKibben, Longshore's claim is barred. Appellant's Br. p. 41.

 In resolving this issue, we first note that Indiana Code section 34–11–2–7 (formerly 34–1–2–1), our statute of limitations with respect to frauds, provides that an injured party has six years after the cause of action accrues to file an action. Additionally, at the time Longshore agreed to purchase the home from McKibben, the

implied warranty of habitability also was governed by a six-year statute of limitations. *Habig v. Bruning*, 613 N.E.2d 61, 63 (Ind.Ct.App.1993).[3] Furthermore, the cause of action accrues "and the applicable statutes of limitations begin to run when the injured party knows or, in the exercise of ordinary diligence, could have known, that he or she had sustained an injury." *Id.* at 64.

During Longshore's deposition, he stated that Debbie was in charge of the efforts to build the pool. Appellant's App. p. 31. According to the application for the pool permit, *Debbie*—who was not yet married to Longshore—applied for the pool permit on May 3, 1993. Appellant's App. p. 54. As part of this process, Debbie was given a copy of the septic permit application filed by McKibben in 1991. Appellant's App. p. 58. However, Longshore indicated in his deposition that he never saw the pool permit—or the attached septic system permit application—until after litigation had begun. Appellant's App. p. 31. Thus, contrary to McKibben's argument, Longshore *was not* alerted to the fact that the septic permit application stated that the home would have only three bedrooms.

McKibben argues that even if Longshore did not personally know about the septic permit application listing a septic system for only three bedrooms, Debbie, who while acting as Longshore's agent received the pool permit, was aware of the three bedrooms. Consequently, Debbie's knowledge of the three-bedroom septic permit application should be imputed to Longshore. Appellant's Br. p. 41. However, in *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 403 (Ind.Ct.App.1992), this court held that a defendant may not use the doctrine of imputed knowledge as a

**3.** Indiana Code section 32–27–2–8, enacted in 2002, applies either a two-, four-, or ten-year

warranty of habitability depending on the type of injury occurring to the home.

shield to limit liability because the doctrine's purpose is to *extend* liability to a principal who benefits from the acts of a tortious agent.

Because Longshore showed that a genuine issue of material fact remained as to his knowledge that he had been provided with a three-bedroom septic system, the trial court correctly denied McKibben's motion for summary judgment.

### V. Waiver of Inspection

McKibben next argues that the purchase agreement signed by Longshore expressly waived any liability on the part of McKibben for breach of the warranty of habitability. Appellant's Br. p. 40. Specifically, McKibben notes that the purchase agreement provided that an independent inspection could have been required as part of the sale process, but Longshore chose to waive the inspection requirement.

We note that our General Assembly has provided specific steps that a builder must take in order to disclaim implied warranties, such as the warranty of habitability. Indiana Code section 32–27–2–9—formerly Indiana Code section 34–4–20.5–9—provides as follows:

> The builder may only disclaim all implied warranties if the following minimum conditions are met:
>
> (1) The warranties defined in this chapter are expressly provided for in the written contract between a builder and an initial home buyer of a new home.
>
> (2) The performance of the warranty obligations is backed by an insurance policy in an amount at least equal to the purchase price of the new home.
>
> (3) The builder carries completed operations products liability insurance covering the builder's liability for reasonably foreseeable consequential damages arising from a defect covered by the warranties provided by the builder.

Thus, the legislature has decreed that other attempts at disclaiming the implied warranty of habitability are insufficient. McKibben provided no evidence that it met the requirements of Indiana Code section 32–27–2–9. Because the evidence does not show that the disclaimer requirements of Indiana Code section 32–27–2–9 were followed, the trial court correctly denied McKibben's motion for summary judgment on this basis.

### VI. Collateral Attack

McKibben next contends that Longshore improperly mounted a collateral attack on an eight-year-old administrative determination. Specifically, McKibben argues that Joe Cross, a Howard County Health Officer, specifically found that the septic system was in compliance with the ordinance. Appellant's Br. p. 43. McKibben reasons that such an administrative determination may not be collaterally attacked.

McKibben's argument here is misplaced. We note that Cross's inspection was limited to inspecting the septic system as the home was being built to ensure that it complied with the issued permit. Appellant's App. p. 63. In short, Cross was responsible for checking what was "in the ground" with what was "on paper." The permit obtained by McKibben was for a three-bedroom septic system. Cross verified that a three-bedroom septic system was installed. However, this fact makes no difference with respect to Longshore's fraud, misrepresentation, or breach of warranty of habitability claims, as Longshore alleged that McKibben marketed the home as a four-bedroom home when the septic system only had the capacity to handle three bedrooms. Thus, the trial court did not err in denying McKibben's motion for summary judgment on this ground.

## VII. Affidavits

McKibben argues that the trial court erred when it overruled McKibben's objection to the affidavits of five expert witnesses. Specifically, McKibben claims that Longshore made no foundation showing that Robert Paulus, Chris Steward, Dr. James Converse, Tom Adams, or Richard Blazer were qualified to give testimony as experts or skilled witnesses. Appellant's Br. p. 46.

 We first note that Indiana Evidence Rule 702(a) allows testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education." The decision to admit or exclude proffered expert testimony is entrusted to the discretion of the trial court. *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1263 (Ind.Ct.App.2002). We will reverse the trial court only if its decision is clearly against the logic and effect of the facts and circumstances or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* We note that a trial court may admit into evidence the testimony of a person who has obtained knowledge through practical experience or training. *Creasy v. Rusk*, 730 N.E.2d 659, 669 (Ind.2000).

 Robert Paulus's affidavit states that he was "employed by the Howard County Department of Health." Appellant's App. p. 332. However, Paulus's affidavit and its attachments are completely devoid of any information regarding training or practical experience in the area of septic system inspection or installation. Thus, the trial court abused its discretion in overruling McKibben's objection to the Paulus affidavit.

 Chris Steward's affidavit states that he "was previously employed as a licensed septic installer in the State of Indiana and was approved as a septic installer by the Howard County Department of Health." Appellant's App. p. 341. This information shows that Steward had some sort of training in the field of septic system installation. Thus, the trial court's decision is not clearly against the logic and effect of the facts and circumstances. The trial court did not abuse its discretion in overruling McKibben's objection to Steward's affidavit.

 Dr. James Converse's affidavit stated that he is an engineering professor at the University of Wisconsin and has served on committees dedicated to the study of wastewater treatment systems. Appellant's App. p. 375–76. This information provided a foundation for Dr. Converse's statement, also in the affidavit, that "the vast majority of states and local regulations or ordinances regarding septic system requirements are based upon the number of bedrooms" in a home. Appellant's App. p. 376. The trial court did not abuse its discretion in allowing Dr. Converse's affidavit into evidence.

 Tony Adams stated in his affidavit that he has "been involved in soil sampling for septic systems since 1990" and that he is a "certified soil scientist." Appellant's App. p. 387. Attached to his affidavit was a letter discussing the results of two soil borings. Appellant's App. p. 388. Given Adams's experience in soil sampling and certification as a soil scientist, the trial court's decision to allow his affidavit into evidence was not clearly against the logic and effect of the facts and circumstances. Thus, the trial court did not err in accepting Adams's affidavit.

 In his affidavit, Blazer states that he is a licensed septic installer and has been installing septic systems for more than twenty years. Appellant's App. p. 416. Blazer's experience was a sufficient

basis with which to admit his affidavit into evidence.

While the trial court erred in considering Paulus's affidavit, Longshore presented sufficient evidence showing that genuine issues of material fact remained. Dr. Converse's affidavit established the method used in determining septic system requirements. Appellant's App. p. 376. Both Steward's and Blazer's affidavits stated that, in their opinions, Longshore's septic system was undersized. Appellant's App. p. 341, 416. Thus, summary judgment was appropriately denied.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court did not err in denying McKibben's motion for summary judgment and remand this cause for trial.

Affirmed and remanded.

SULLIVAN, J., and DARDEN, J., concur.